

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FILED
MAY 15 2017
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

In re:                                    ) Case No. 15-20800-B-7
                                          )
TRINA GOLD,                               ) DC No. GJH-3
                                          )
                                          )
                Debtor(s).                )
_____)

**MEMORANDUM AND ORDER**

I. INTRODUCTION

This memorandum and order is entered following an evidentiary hearing held on April 17, 2017. Appearances on behalf of debtor Trina Gold ("Debtor"), the chapter 7 trustee ("Trustee"), the debtor's non-filing spouse and only objecting party Damon Gold ("Mr. Gold"), Wells Fargo Bank, National Association, as Trustee for Banc of America Funding Corporation, Mortgage Pass-Through Certificates, Series 2007-E, its assignees and/or successors ("WFB"), by and through its servicing agent Nationstar Mortgage, LLC ("Nationstar"), were stated on the record.

The evidentiary hearing was set on a motion initially filed by the Trustee for authorization to make a final distribution of proceeds from the sale of real property located at 3149 W. Lake Blvd., Tahoe City, California ("Tahoe Property") to the secured

creditors with senior and junior liens on the property.[1] The purpose of the evidentiary hearing was to confirm the identity of the payee and secured creditor who held the senior lien on the Tahoe Property and, thus, the identity of the proper party to whom the Trustee could distribute up to $1,117,424.00 of the Tahoe Property sale proceeds in full satisfaction of the lienholder's secured claim.[2]

The court continued the evidentiary hearing to May 16, 2017, to announce its decision. However, upon further consideration the court has elected to enter a written decision in this memorandum and order in lieu of an oral decision placed on the record. This memorandum and order constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a) applicable by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).[3]

---

[1] The Debtor and Mr. Gold owned the Tahoe Property. After the Debtor filed a chapter 7 petition on February 2, 2015, the court authorized the Trustee to sell the Tahoe Property free and clear of liens with all liens to attach to the sale proceeds in the same order as they existed pre-petition and subject to all defenses and any defects. The Debtor and Mr. Gold consented to the sale of the Tahoe Property.

[2] Nationstar initially objected to this payoff amount asserting that the amount owed was more than $1,117,424.00. However, during the evidentiary hearing Nationstar's attorney stated that a $1,117,424.00 payoff was no longer disputed and that amount would satisfy the secured claim in this case and the lien on the Tahoe Property.

[3] The court takes judicial notice of the docket in this chapter 7 case and in the related chapter 13 case the Debtor and Mr. Gold filed in this court on October 24, 2011, as case no. 11-45279. Mr. Gold was dismissed from that case on April 30, 2012, and the case was dismissed on June 26, 2012.

## II. BACKGROUND

On or about July 25, 2007, the Debtor and Mr. Gold signed a promissory note in the original principal amount of $850,000.00 payable to Bank of America N.A. ("BofA"). The note provided for interest only from 2007 through 2017 with an initial fixed-interest rate of 6.875% through August 1, 2012, at which time the interest rate would change to the average 1-year LIBOR rate plus 2.250% with similar annual interest rate adjustments through 2017. So, from loan origination in 2007 through July 1, 2012, monthly interest-only payments were fixed at $4,869.79.

The note was secured by a deed of trust on the Tahoe Property which also named BofA as the beneficiary. The deed of trust was recorded with the Placer County Recorder on July 30, 2007. A copy of the deed of trust is attached as Nationstar's Exhibit 2 to dkt. 140 and is admitted into evidence without objection.[4]

An assignment of the beneficial interest of the deed of trust from BofA to WFB dated January 25, 2012, was recorded with the Placer County Recorder on or about February 9, 2012. A copy of the assignment is attached as Nationstar's Exhibit 3 to dkt. 140 and is admitted into evidence without objection.

When the Trustee sold the Tahoe Property, it appeared from recorded documents and a title report that the property was

---

[4]Nationstar filed exhibits not less than three times. See dkt. nos. 140, 143, and 146. Without reviewing and comparing every single page of each exhibit, the documents appear to be identical. Docket 140 is used for purposes of this memorandum and order.

encumbered by a senior and a junior lien.[5] WFB filed a motion for relief from the automatic stay earlier in the bankruptcy case in which it asserted that it is the senior lienholder. Nationstar subsequently appeared in the bankruptcy case on WFB's behalf. Nationstar now asserts that it is WFB's loan servicer for the loan secured by the Tahoe Property and, in that capacity, is the proper payee and recipient of the Tahoe Property sale proceeds.

Mr. Gold asserts that neither WFB nor Nationstar are the proper payee(s) or recipient(s) of the Tahoe Property sale proceeds because neither hold a claim secured by that property. He concedes that the principal balance owed on the note is $823,000.00.[6] However, he asserts that amount is not owed as a secured claim because the note and deed of trust on the Tahoe Property are split which renders the obligation unsecured and not payable from the Tahoe Property sale proceeds in the absence of a timely proof of claim which neither WFB nor Nationstar filed in this chapter 7 case.

---

[5]The junior lien was held by Michael Gold. It has been paid in full and is no longer at issue. The present dispute concerns only the identity of the senior lienholder and the proper payee of the Tahoe Property sale proceeds in satisfaction of the lienholder's secured claim.

[6]That concession is based on Mr. Gold's Exhibit A which is the final report that the chapter 13 trustee filed in case no. 11-45279 on August 16, 2012. Mr. Gold maintains that final report reflects a lump-sum distribution by the chapter 13 trustee towards the principal balance owed on the note when the chapter 13 trustee closed the case in August 2012 following its dismissal in June 2012. The court admitted Exhibit A. Its implications are discussed below.

- 4 -

# III. DISCUSSION

### A. The Evidentiary Hearing and the Production of the Original Promissory Note Endorsed Payable to WFB

Asserting that it is the proper payee and recipient of Tahoe Property sale proceeds for the benefit of WFB, Nationstar brought with it to court what its witness, Gene Mays ("Mr. Mays"), described as Nationstar's "collateral file." The documents in the collateral file consisted of original loan documents for BofA's 2007 loan to the Debtor and Mr. Gold. Those documents included an original promissory note endorsed by BofA payable to WFB (the "Original Endorsed Note"). The court inspected all documents in the collateral file as did Mr. Gold and his attorney, the Debtor and her attorney, and the Trustee and his attorney.

Nationstar moved to admit the Original Endorsed Note into evidence and Mr. Gold objected on the basis that the Original Endorsed Note is not a business record and it was not properly authenticated. The court reserved its ruling on Mr. Gold's objection. For reasons explained below, the court now overrules Mr. Gold's objection and admits the Original Endorsed Note into evidence for its full probative value.

Mr. Gold cites and relies primarily on In re Vargas, 396 B.R. 511 (Bankr. C.D. Cal. 2008), as the basis for his objection to the admission of the Original Endorsed Note. Mr. Gold's reliance on Vargas is misplaced.

In Vargas, the court stated that a promissory note need not qualify under the business records exception for admission into

- 5 -

evidence because the note itself is not hearsay. Id. at 519.
Rather, the court explained that a promissory note only needs to
be authenticated in order for it to be admitted into evidence.
Id. at 519-20. This court does not disagree with that general
proposition.

The promissory note in Vargas was not admitted into evidence
because it was not authenticated. And it was not authenticated
because the witness testifying about the note gave no testimony
as to its authenticity and there was no other evidence on the
subject. Id. at 520. In that regard, Vargas seems to suggest
that the only way a promissory note may be authenticated is by
witness testimony. This court disagrees with that proposition.

Commercial paper is self-authenticating under Federal Rule
of Evidence 902(9).[7] U.S. V. Pang, 362 F.3d 1187, 1192 (9th Cir.
2004). Promissory notes are a species of commercial paper that
are self-authenticating under Federal Rule of Evidence 902(9).
Rogan v. Bank One (In re Cook), 457 F.3d 561, 566 (6th Cir. 2006)
("[T]he promissory note is self-authenticating evidence pursuant
to Rule 902 of the Federal Rules of Evidence"); Hummel v.
Northwest Trustee Services, Inc., 180 F. Supp. 3d 798, 803 n.3
(W.D. Wa. 2016) ("Promissory notes are, of course,

---

[7]Federal Rule of Evidence 902(9) states as follows:
The following items of evidence are
self-authenticating; they require no extrinsic evidence
of authenticity in order to be admitted:
[. . .]
(9) Commercial Paper and Related Documents. Commercial
paper, a signature on it, and related documents, to the
extent allowed by general commercial law.

self-authenticating."); <u>Theros v. First American Title Ins. Co.</u>, 2011 WL 462564, *2 (W.D. Wa. 2011) ("Promissory notes are self-authenticating under Federal Rule of Evidence 902(9)."); <u>Pradhan v. Citibank, N.A.</u>, 2011 WL 90235, *5 n.4 (N.D. Cal. 2011) ("Furthermore, under Federal Rule of Evidence 902(9), promissory notes are self-authenticating."). As a self-authenticating document, an original promissory note requires no extrinsic evidence of authenticity in order to be admitted into evidence. <u>U.S. v. Varner</u>, 13 F.3d 1503, 1509 (11th Cir. 1994) ("Mere production of a note establishes prima facie authenticity and is sufficient to make a promissory note admissible."); <u>U.S. v. Carriger</u>, 592 F.2d 312, 316 (6th Cir. 1979) (finding that district court erred in requiring extrinsic evidence to authenticate promissory note); <u>Hooper v. Anderson (In re Hooper)</u>, 2012 WL 603766, *7-8 (9th Cir. BAP 2012) (recognizing that under California law there is a presumption that commercial paper offered in evidence is authentic without the need for extrinsic evidence for admissibility); 31 Charles Alan Wright & Victor James Gold, FEDERAL PRACTICE AND PROCEDURE EVID. § 7134 (1st ed. 2004) ("If an item is self-authenticating under Rule 902, the authenticity of that item is established for purposes of deciding admissibility even though the opponent has evidence disputing authenticity.").

Regarding the self-authentication and admissibility of an original promissory note, the court considers <u>In re Miller</u>, 2012 WL 6041639 (Bankr. D. Colo. 2012), <u>aff'd</u>, 2013 WL 4776054 (D.

- 7 -

Colo. 2013), aff'd, 577 Fed. Appx. 849 (10th Cir. 2014), cert. denied, 135 S. Ct. 1432 (2015), highly persuasive. In Miller, Judge Romero wrote as follows:

> The Court inspected the original Note. Pursuant to FED. R. EVID. 902(9), promissory notes are considered self-authenticating commercial paper, and do not require a witness or extrinsic evidence of authenticity. 'Mere production of a note establishes prima facie authenticity and is sufficient to make a promissory note admissible.' Based on its review of the original Note produced at the evidentiary hearing, the Court finds [the bank] has established prima facie evidence as to the authenticity of the Note.

Id., 2012 WL 6041639 at *9-10 (internal citations in footnotes omitted).

Attempting to rebut Nationstar's prima facie showing of authenticity by the production of the Original Endorsed Note, Mr. Gold maintains that the Original Endorsed Note differs from the copy of the note that Nationstar produced as its Exhibit 1 at dkt. 140. The purported difference is that the former is endorsed by BofA payable to WFB whereas the latter is endorsed in blank. Mr. Mays testified that except for the endorsements, the two notes are the same. The court finds Mr. Mays' testimony credible and believes Mr. Mays over the unsupported and unsubstantiated claim of Mr. Gold's attorney.[8] The court also

---

[8]Mr. Mays testified extensively about his knowledge and experience with original loan documents in general and the original loan documents in this case in particular. He explained the process by which Nationstar acquired the original promissory note from BofA, that Nationstar initially acquired that original note endorsed in blank, and that the original note was subsequently endorsed by BofA payable to WFB. Mr. Gold did not object to Mr. Mays' initial testimony on these matters nor did he offer any other evidence to contradict Mr. Mays' testimony.

- 8 -

independently inspected both notes and concurs that except for the endorsements both notes are the same. Any difference in the endorsement is immaterial for purposes of authenticity and admission of the Original Endorsed Note. <u>See e.g.</u>, <u>Hummel</u>, 180 F. Supp. 3d at 803 n.3.

Mr. Gold's attorney also stated that Mr. Gold did not sign the Original Endorsed Note. Nationstar's attorney objected to counsel testifying on Mr. Gold's behalf and the court sustained that objection. Mr. Gold was present in the courtroom throughout the evidentiary hearing and his attorney could have easily called him as a witness to testify about his signature on the Original Endorsed Note. Mr. Gold's attorney neglected to call Mr. Gold as a witness. As a result, Mr. Gold did not testify and there is no other evidence that Mr. Gold's signature and the Original Endorsed Note are other than authentic.[9]

In short, Mr. Gold has produced no evidence to rebut Nationstar's authentication of the Original Endorsed Note based

---

[9] The also court expressed some concern about timely production of the Original Endorsed Note as required by the local rules. <u>See</u> LBR 9017-1. However, the court also explained that automatically resorting to an exclusionary sanction for noncompliance with production deadlines established by the local rule is strongly disfavored. <u>See</u> <u>Bank of Stockton v. Dugo (In re Dugo)</u>, 2016 WL 4126757 (E.D. Cal. 2016); <u>Taylor v. Singh (In re Singh)</u>, 2016 WL 770195 (9th Cir. BAP 2016); <u>Kostecki v. Sutton (In re Sutton)</u>, 2015 WL 7776658 (9th Cir. BAP 2015). Moreover, as noted, Mr. Gold was present in the courtroom throughout the evidentiary hearing, he inspected the Original Endorsed Note, his attorney could have called him to testify about his signature on or other matters related to that original note, and his attorney neglected to have him so testify. Under those circumstances, any concerns the court expressed about the timing of the production of the Original Endorsed Note are alleviated.

upon its in-court production during the evidentiary hearing. Therefore, to re-iterate what the court stated above, Mr. Gold's objection to the admission of the Original Endorsed Note on the basis of authentication is overruled and his objection to the admission of that original note on the basis it is not a business record is overruled as moot. The Original Endorsed Note is admitted into evidence for its full probative value.

B. <u>The Note and Deed of Trust are not Split</u>

The Original Endorsed Note is endorsed by BofA payable to WFB making WFB the payee. Based on the February 2012 recorded assignment, WFB is also the beneficiary of the deed of trust on the Tahoe Property.

How or when WFB acquired both interests under the Original Endorsed Note and the deed of trust is immaterial. The Ninth Circuit bankruptcy appellate panel explained in <u>Hooper</u>, <u>supra</u>, that when a note is transferred is legally irrelevant, stating:

> In both the bankruptcy court and this appeal, the Hoopers object that there is no evidence of the date of the transfer of the Note from Greenpoint to GMAC. After noting that under the facts of this case it would be very difficult to determine the date of transfer, the bankruptcy court ruled that, 'I don't think when [the Note] was transferred is important.' Hr'g Tr. 5:2-3, March 29, 2011. This ruling was correct. There is nothing in the California Commercial Code that requires proof of the date of transfer as a condition to enforcing a note.

<u>Hooper</u>, 2012 WL 603766 at *8; <u>see also</u> <u>Adler v. Sargent</u>, 109 Cal. 42, 49-50 (Cal. 1895).

The critical point here is that one entity, *i.e.*, WFB, holds both interests under the original promissory note and the deed of

- 10 -

trust on the Tahoe Property. Not only are those interests unified, but, the unity of those interests makes the obligation on the note a secured claim in this bankruptcy case. Therefore, Mr. Gold's objection that the obligation on the note is not a secured claim and that there is no creditor to whom proceeds from the sale of the Tahoe Property may be distributed in satisfaction of a claim secured by a lien on the Tahoe Property that transferred to the proceeds from the sale of that property are overruled.

  C. Then Who Gets the Tahoe Property Sale Proceeds?

With the Original Endorsed Note now admitted into evidence and the obligation on that note a secured claim in this bankruptcy case, the question becomes whether Nationstar is a proper payee and recipient of the Tahoe Property sale proceeds as it asserts that it is. The answer to that question depends on whether Nationstar is "a person entitled to enforce the note" under California Commercial Code § 3-301 and that answer is found in Veal v. American Home Mortgage Servicing, Inc. (In re Veal), 450 B.R. 897 (9th Cir. 2011).

In Veal, the Ninth Circuit bankruptcy appellate panel explained that there are at least two ways a person can acquire "person entitled to enforce" status under § 301 of the Uniform Commercial Code.[10] Id. at 910. Under U.C.C. § 1-201(5) a "person entitled to enforce" a note may be a "holder" which means the

---

[10] The applicable provisions of the California Commercial Code are virtually identical to the U.C.C. code sections discussed in Veal.

- 11 -

person possesses the note and either (i) the note is made payable to the person who has possession or (ii) the note is payable to the bearer (which includes an endorsement in blank). Id. at 911; accord Cal. Comm. Code § 1201(5). Alternatively, a person may be a "nonholder in possession of the [note] who has the rights of a holder." Veal, 450 B.R. at 911 (citing U.C.C. § 3-301); accord Cal. Comm. Code § 3-301(ii).

The appellate panel in Veal also explained that a negotiable instrument, such as a promissory note, may be transferred by a person other than the issuer without being negotiated and the transfer of the note vests in the transferee the rights of enforcement held by the transferor. Veal, 450 B.R. 911 (citing U.C.C. § 3-203(a), (b)); accord Cal. Comm. Code § 3203(a), (b). Put in context, a holder such as WFB (who is not the issuer) may transfer by physical delivery (and thus without negotiating) an original promissory note (such as the Original Endorsed Note) to a transferee (such as Nationstar) and by that transfer vest in the transferee (Nationstar) its holder rights which includes the right to enforce the note. However, in order to acquire this "nonholder in possession who has the rights of a holder" status, and thus a "person entitled to enforce the note" status, the transferee (Nationstar) must demonstrate both the fact of delivery and the purpose of delivery of the note. Id. at 912. Nationstar has established both.

Nationstar has actual physical possession of the Original Endorsed Note. It produced that original note in court.

Nationstar has thus established the fact of delivery of the original note.

Nationstar has also established the purpose of delivery or, in other words, the reason it has possession of the Original Endorsed Note. Mr. Mays testified that Nationstar has possession of that original note in order to service it for and on behalf of WFB. When asked about Nationstar's specific obligations as they pertain to its role as WFB's loan servicer, Mr. Mays testified that Nationstar is authorized to: (1) receive and post the Tahoe Property sale proceeds on behalf and for the benefit of WFB; (2) disburse those sale proceeds to WFB upon receipt; and (3) as servicer in fact, execute and record with the county recorder a release of the lien created by the deed of trust on the Tahoe Property. Mr. Gold did not offer any testimony or other evidence to the contrary. Again, the court finds Mr. Mays' testimony credible.

In short, Nationstar has established both a transfer of the Original Endorsed Note and the purpose of that transfer. Accordingly, Nationstar has established that it is a nonholder in possession with rights of a holder and, as such, it is a person entitled to enforce the Original Endorsed Note. See Valencia v. Carrington Mortgage Services, LLC, 2012 WL 12883833, *16 (D. Hawaii 2012) (stating that under Hawaii § 490:3-301, which is virtually identical to Cal. Comm. Code § 3-301, "CMS is the servicer of the Note on behalf of the Note holder and qualifies as a 'nonholder in possession of the instrument who has the

rights of the holder.'"). As a person entitled to enforce the Original Endorsed Note, Nationstar may receive payments in satisfaction of the obligation created by the note. See Veal, 450 B.R. at 910. Therefore, for the foregoing reasons, the court concludes that Nationstar is a proper payee and recipient of Tahoe Property sale proceeds and the Trustee will be authorized to distribute the sale proceeds to Nationstar for the benefit of WFB and in full and final satisfaction of the claim secured by the deed of trust on the Tahoe Property.

    D.   <u>Then How Much is Payable to Nationstar?</u>

WFB and Nationstar were largely uncooperative with the Trustee's numerous requests over an extended period of time for information regarding loan payment history and loan payoff amount. Nevertheless, using information available in documents filed in this bankruptcy case, the Trustee was able to construct a payoff figure to satisfy the senior lien on the Tahoe Property of up to $1,117,424.00.

As noted above, Nationstar does not dispute the $1,117,424.00 cap and Mr. Gold concedes that $823,000.00 of the principal balance remains owing. Mr. Gold's concession is based on his Exhibit A which is the final report the chapter 13 trustee filed in case no. 11-45279 on August 16, 2012. According to Mr. Gold, that report reflects that on or about August 16, 2012, and as part of the closing of the chapter 13 case, the chapter 13 trustee made a lump-sum payment of $27,000.00 towards the $850,000.00 principal balance owed on the note. Even assuming

Mr. Gold is correct, the court can ascertain that the balance owed on the note would nevertheless exceed $1,117,424.00.

Mr. Mays testified that the loan went into default in October 2009. Accepting Mr. Gold's argument that the $27,000.00 stated in the trustee's final report was a distribution in the form of a lump-sum, principal-reducing payment by the chapter 13 trustee on or about August 16, 2012, that does not affect unpaid interest that accrued on the $850,000.00 principal balance up to that point. At 6.875% - or $4,869.79 monthly - from the October 2009 default through the last month before the LIBOR interest rate adjustment, i.e., July of 2012, there would have been an additional $165,572.86 in interest owed in addition to the $823,000.00 principal. So based on Mr. Gold's argument, the balance due on the note after the chapter 13 trustee purportedly made a principal reducing payment in August of 2012 would have been $998,572.86 ($823,000.00 + $165,572.86).

Additionally, that $998,572.86 loan balance would also have to take into account subsequent required LIBOR interest rate adjustments which were to begin on August 1, 2012. That additional interest also went unpaid from August 2012 through the date the petition in this chapter 7 case was filed on February 2, 2015. The amount of interest on an $823,000.00 principal that accrued and went unpaid during that period would have been sufficient to push the loan payoff balance over the $1,117,424.00 threshold. How much over that threshold is immaterial because, as a person entitled to enforce the Original Endorsed Note,

Nationstar has consented to accept no more than $1,117,424.00 in full satisfaction of the obligation on that note.

**IV. CONCLUSION**

Therefore, based on all the foregoing:

IT IS ORDERED that the Trustee is authorized to distribute $1,117,424.00 of the Tahoe Property sale proceeds to Nationstar, as WFB's loan servicer, in full satisfaction of a secured claim based on WFB's senior lien on the Tahoe Property which transferred to the Tahoe Property sale proceeds upon the sale of that property.

IT IS FURTHER ORDERED that upon receipt of a $1,117,424.00 from the Trustee and the posting of those funds, Nationstar shall cause to be recorded with the Placer County Recorder a full, complete, and unconditional lien release that releases the senior lien on the Tahoe Property and the proceeds from the sale of the Tahoe Property.

IT IS FURTHER ORDERED that the continued hearing set for May 16, 2017, at 9:30 a.m. is VACATED.

Dated: May 15, 2017.

UNITED STATES BANKRUPTCY JUDGE

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Gregory J. Hughes
3017 Douglas Blvd #300
Roseville CA 95661

Susan S. Montgomery
1925 Century Park E #2000
Los Angeles CA 90067

Melissa A. Vermillion
20750 Ventura Blvd #100
Los Angeles CA 91364

Mehrdaud Jafarnia
1770 Fourth Ave
San Diego CA 92101

John S. Mohun
10833 Donner Pass Rd #205
Truckee CA 96161

Douglas M. Whatley
PO Box 538
Folsom CA 95763-0538